## Watkins *vs.* The State of Georgia.

A witness in a criminal case, who once resided in Georgia, formed here a bad general character, removed to another State whilst bearing such character (which was seven or eight years before the trial), and has resided there ever since, may be impeached by proof of such bad character left behind in Georgia, though there be no evidence touching the character formed or borne by the witness in the State to which he removed, and in which he resided at the time of testifying.

February 18, 1889.

Criminal law. Witness. Impeachment. Evidence. Before Judge Fort. Lee superior court. November adjourned term, 1887.

Reported in the decision.

J. W. Walters, C. W. Bass and L. J. Blalock, for plaintiff in error.

C. B. Hudson, solicitor-general, by B. P. Hollis and E. F. Hinton, for the State.

Bleckley, Chief Justice.

In November, 1887, Watkins was tried for the murder of Columbus Milner, who was assassinated in July, 1886. The evidence against him was chiefly circumstantial. One of the witnesses for the State was Mrs.

Hollis, who resided in Florida.  She testified to certain admissions made to her by Watkins in Florida.  There can be no doubt of the vital materiality of her testimony.  The jury having found the accused guilty, he made a motion for a new trial, on various grounds, one of which was that the court erred in not allowing him to prove by Suggs, Washman and others, that they knew the general character of Mrs. Hollis when she lived in Georgia, and up to the time she moved to Florida, to wit, in 1879 or 1880 ; that it was bad, and from it they would not believe her on oath,—the court holding that she could be impeached on the ground of general bad character in no other way than by proving what her character now is.  A new trial being denied, the case was brought here on writ of error, and this ground of the motion was the one chiefly insisted upon in the argument before us.

The code, §3873, declares : " To prove general bad character, the impeaching witness should be first asked as to his knowledge of the general character of his witness, and next as to what that character is, and lastly, he may be asked if, from that character, he would believe him on his oath."  No doubt this provision is in substantial consonance with the law of England, and of most of the States on the subject. No doubt, too, it contemplates primarily that present, rather than past, character is to be regarded.  But on such a question, the past and present are so related that no complete severance between them can be made. Even those courts which seem most strict in confining the evidence to the present time, allow very considerable latitude.  Compare Rogers *vs.* Lewis, 19 Ind. 405; City of Aurora *vs.* Cobb, 21 *Ib.* 492 ; Rucker *vs.* Beaty, 3 *Ib.* 70; Straton *vs.* State, 45 *Ib.* 468; Louisville, etc. Rwy. *vs.* Richardson, 66 *Ib.* 43; The Memphis Co. *vs.*

McCool, 83 *Ib.* 392; Young *vs.* Commonwealth, 6 Bush, 312; Manion *vs.* Lambert, 10 Bush, 295; Wood *vs.* Mathews, 73 Mo. 477. Some of the authorities lay it down that the range in time is subject to a sound discretion to be exercised by the trial judge. Straton *vs.* State, *supra*; Buse *vs.* Page, 32 Minn. 111; Holliday *vs.* Cohen, 34 Ark. 707.

As the law prescribes no definite limit in time, we think the discretion of the court must of necessity be exercised in every instance where the proposed evidence is not so remote as to preclude all difference of opinion. The discretion, however, must be soundly exercised on the facts and circumstances of the particular case. Here the character sought to be proved was the most recent one established in this State by the witness, and the one which she left behind her when she removed and settled herself in another jurisdiction. The process of our courts to enforce the attendance of witnesses would be of no avail as against residents of Florida, and it does not appear that any witness within our jurisdiction was acquainted with her character there. It may be said, therefore, that what was offered to be proved was all that could be proved touching the witness's character, there being no provision of law for taking depositions in criminal cases.

Even without this special fact of the witness's residence beyond the limits of the State, there is respectable, and we think sound, authority for proving the character which she had formed before removal. In Sleeper *vs.* Van Middleworth, 4 Denio, 431, it was ruled that the character of a witness might be impeached by persons in whose neighborhood he had lived until four years prior to the trial, though he had then removed to another place, fourteen miles from the neighborhood, where he had since resided, and the witnesses did not

know of the character which he bore at the latter place. To the like effect, in substance, is Rathbun *vs.* Ross, 46 Barbour, 127. In Graham *vs.* Chrystal, 41 N. Y. (2 Keyes), 21, the impeaching witnesses had knowledge of character eight or ten years prior to the trial, but none later. And see Martin *vs.* Martin, 25 Ala. 201; Kelley *vs.* State, 61 Ala. 19. See also, *Sims vs. The State,* 68 *Ga.* 486; *Turner vs. The State,* 70 *Ga.* 766.

We think that the evidence tendered was admissible, and that the court erred in not granting a new trial.

Judgment reversed.